

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BORIS ELTSEFON, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:11cv991 |
| ) | |
| STATE FARM MUTUAL ) | |
| AUTOMOBILE INSURANCE CO., ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

After suffering serious injuries in an automobile accident, Boris Eltsefon and Tamara Aderkas (collectively "plaintiffs"), a retired married couple, allegedly accepted defendant insurance company's offer to settle their claims against defendant's insured. Later, when defendant allegedly reneged on the settlement, plaintiffs brought this action solely against defendant in state court, claiming (i) breach of oral agreement, (ii) fraud, and (iii) unjust enrichment. Defendant removed on the basis of diversity jurisdiction, and plaintiffs now seek a remand of the matter to state court, arguing that no diversity exists because this lawsuit is a "direct action" against an insurer, and thus 28 U.S.C. § 1332(c)(1) deems defendant to be a citizen of the state of which its insured is a citizen, which in this instance is the same as plaintiffs' home state. Defendant disagrees claiming that this action falls outside the ambit of the phrase "direct action" as used in § 1332(c)(1). Accordingly, the question squarely presented here is whether plaintiffs' claims against defendant constitute a "direct action" against an insurer within the meaning of § 1332(c)(1).

I.

On April 21, 2009, plaintiffs sustained multiple injuries in a motor vehicle collision with Robert M. Settles, who was operating a vehicle owned by Dorothy B. Cook. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is the liability insurance carrier for the vehicle. According to plaintiffs, on or about June 10, 2010, they began negotiations with defendant's authorized agent regarding settlement of plaintiffs' claims against defendant's insured growing out of the collision. Plaintiffs further state that defendant's agent offered to settle all claims for "an amount not less than the amount of [p]laintiffs' medical expenses" in exchange for (i) plaintiffs' promise not to commence litigation against the insured, and (ii) plaintiffs' promise "to assume [defendant's] burden of going through a complex and multi-step process of reporting the claims to Medicare and obtaining Medicare Conditional Payment Letters outlining all medical expenses paid on behalf of the [p]laintiffs." Compl. ¶ 12. Plaintiffs claim they accepted the offer, and claim further that pursuant to the terms of the agreement, they (i) refrained from suing the insured, and (ii) reported the claims to Medicare. According to plaintiffs, after they sent the Medicare Conditional Payment Letters to defendant on or about February 21, 2011, defendant's agent stated that defendant would review the letters and contact plaintiffs as soon as the review was complete. On several occasions in the following two months, plaintiffs state that they attempted unsuccessfully to contact defendant's agent to determine the status of defendant's review. On April 21, 2011, the two-year statute of limitations for a personal injury action growing out of the collision expired. On May 2, 2011, defendant sent a letter to plaintiffs, purporting to withdraw all

offers of settlement. There is no allegation in the complaint that Settles or Cook were involved in, or were aware of, any negotiations between plaintiffs and defendant.

On May 13, 2011, plaintiffs initiated a personal injury action in Fairfax County Circuit Court (the "Personal Injury Action") against Settles, Cook, and State Farm alleging (i) negligence, (ii) breach of oral agreement, (iii) fraud, and (iv) unjust enrichment. Count I (negligence) was brought against Settles and Cook and arose out of the collision. Count III (fraud) and count IV (unjust enrichment) were brought against State Farm and arose out of State Farm's conduct during pre-litigation settlement negotiations. Count II (breach of oral agreement) appears to have been brought against Settles, Cook and State Farm and arose out of State Farm's conduct during pre-litigation settlement negotiations. The Fairfax County Circuit Court dismissed State Farm as a party and also dismissed the remaining claims against Settles and Cook. *See* Def's Opp. Ex. 8 and Ex. 9.[1]

On August 5, 2011, plaintiffs initiated this action against State Farm by filing a complaint in the Fairfax County Circuit Court (the "Complaint"), alleging: (i) breach of oral agreement, (ii) fraud, and (iii) unjust enrichment. On September 15, 2011, defendant removed this action on the basis of diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). The parties do not dispute that (i) both plaintiffs are citizens of Virginia, (ii) defendant is an Illinois corporation with its principle place of business in

---

[1] This record does not reflect whether the Circuit Court considered if equitable tolling of the statute of limitations was appropriate. This record also does not reflect whether the Circuit Court dismissed the breach of oral agreement claim because it was time barred or for other reasons. Neither of these matters is material to the resolution of the question presented here.

Illinois, or (iii) the amount in controversy exceeds $75,000. The parties also do not dispute that Settles and Cook, the insured, are both citizens of Virginia. The parties dispute only whether defendant may also be considered a citizen of Virginia pursuant to the "direct action" proviso in § 1332(c)(1).

II.

For decades, a corporation's citizenship for diversity purposes was statutorily limited to (i) its state of incorporation and (ii) the state of its principal place of business. This limitation was expanded slightly in 1964 when Congress was moved to respond to the flood of diversity cases brought pursuant to a Louisiana statute that allowed injured claimants to bring an action directly against a tortfeasor's insurer. This Congressional response took the form of an amendment to § 1332(c)(1) which provided that, in a "direct action" against an insurer, the insurer's citizenship was deemed to include the insured's state of citizenship.[2] Thus, if plaintiffs' action here is a "direct action" against defendant, diversity would not exist as defendant would then be deemed a citizen not only of the state of its incorporation and the state of its principal place of business, but also of the home state of its insured, which is the same as plaintiffs' home state. Thus, resolution of

---

[2] Specifically, Congress added the following proviso to § 1332(c)(1):

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business[.]

28 U.S.C. § 1332(c)(1).

the question presented here requires a clear understanding and definition of a "direct action" under § 1332(c)(1).

Although Congress did not define "direct action" in the proviso, nor has the Fourth Circuit done so, it is nonetheless not difficult to discern the meaning of the phrase based on the proviso's legislative history and purpose. As the Senate Report confirms, the amendment was enacted specifically in response to Louisiana's "direct action" statute that permitted injured parties to sue a tortfeasor's insurer directly for those damages caused by the insured tortfeasor, without joining the insured torfeasor as a party. Because the Louisiana statute led to a sharp increase in diversity cases that were not "within the spirit or the intent" of diversity jurisdiction, Congress amended § 1332(c)(1) specifically to counter its effect. S. REP. NO. 88-1308, at 4 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 2778, 2784.[3]

Given the clear history and purpose of the proviso, it follows that a "direct action," put simply, is an action by an injured party against an insurer to recover for damages caused not by the insurer but by its insured, who is not joined in the action.

---

[3] The Senate Report is quite clear on this narrow purpose, stating at its outset:

> The purpose of the proposed legislation is to amend [§ 1332(c)(1)], so as to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant.

S. REP. NO. 88-1308, at 1 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 2778, 2778. See also *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 9-10 (1989) (the Supreme Court, although relying on the proviso's plain language to determine that an insurer's appeal of a worker's compensation award was not a "direct action," noted that the narrow purpose of the proviso, apparent from its legislative history, provided additional support).

This definition of "direct action" finds firm support in the cases discussing the phrase. As the Ninth Circuit has explained, "Courts have uniformly defined the term 'direct action' as used in [§ 1332(c)(1)] as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-902 (9th Cir. 1982).[4] Importantly, simply because an injured claimant sues a tortfeasor's insurer does not mean that a lawsuit is a "direct action" under § 1332(c)(1). Unless the cause of action grows out of the conduct of the insured and could be brought against the insured, there is no "direct action." Accordingly, it follows that there is no "direct action" within the meaning of the proviso where an injured party brings suit against an insurer for the insurer's independent wrongs, such as an insurer's failure to settle in good faith or within policy limits. *See Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 675 (2d Cir. 1992) ("[T]he general rule is that the proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits

---

[4] *See also Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 674 (2d Cir. 1992) ("Sensitive to congressional design, a number of courts have recognized that 'direct action' is a form of words taken from the Louisiana statute and that simply because an insurer is a direct party does not make the litigation a 'direct action.' These courts have tended to limit the § 1332(c) proviso to situations where the insurer's status is that of a payor of a judgment based on the negligence of one of its insureds.") (internal citations and quotation marks omitted); *Tuck v. United Services Auto. Ass'n*, 859 F.2d 842, 847 (10th Cir. 1988) (no "direct action" because plaintiffs "are not seeking to impose liability on [defendant] for the negligence of any party insured by [defendant]"); *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985) ("direct action" only where "the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured"); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir. 1979) ("direct action" only where insurer is sued as "merely the payor of a judgment based on the negligence of one of its insureds").

or by an injured third party for the insurer's failure to settle within policy limits or in good faith.").[5]

### III.

In this matter, plaintiffs assert three claims against defendant: (i) breach of oral agreement, (ii) fraud, and (iii) unjust enrichment. It is clear that the fraud and unjust enrichment claims are not "direct actions" under § 1332(c)(1). They are independent tortious acts committed by the insurer for which the insured cannot be held liable.[6] Plaintiffs could not bring claims against the insured for defendant's fraudulent conduct

---

[5] *See also Sours v. Am. States Ins. Co.*, 986 F.2d 1429, at *1 (10th Cir. 1993) (unpublished table decision) (no "direct action" where injured party sued tortfeasor's insurer based on insurer's negligence and bad faith and sought to recover only in excess of policy); *Fortson*, 751 F.2d at 1159 (no "direct action" where injured party brought suit against torfeasor's insurer based on insurer's failure to settle in good faith); *John Cooper Produce, Inc. v. Paxton Nat'l Ins. Co.*, 774 F.2d 433, 436 (11th Cir. 1985) (no "direct action" where injured party brought suit against tortfeasor's insurer based on insurer's "failure to determine the nefarious nature of the [tortfeasor's] scheme" rather than based on torfeasor's fraud or tortious theft); *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 902 (9th Cir. 1982) (no "direct action" where injured party "seek[s] to impose liability on [the insurer] for [insurer's] own tortious conduct," including bad faith refusal to settle claims and intentional and negligent infliction of emotional distress); *Cunningham v. Twin City Fire Ins. Co.*, 669 F.Supp.2d 624, 628-629 (D. Md. 2009) (no "direct action" where injured party brought suit against insurer for insurer's intentional misrepresentation and tortious interference with contractual relations); 13F Charles Alan Wright et al., Federal Practice & Procedure § 3629, at 197 (3d ed. 2009) ("The Ninth Circuit [in *Beckham*] held that the plaintiff's case was not a direct action, since she sought recovery on the basis of the insurer's own actions and the lawsuit was not based on the conduct of the insured. A number of cases of similar tenor have been decided since."); 15 Moore's Federal Practice § 102.58[5] (3d ed. 2009) ("A third-party action is one by an injured party against the insurer of the tortfeasor seeking insurance benefits that are alleged to be due to the plaintiff on account of the insurer's duty to its insured. All direct actions within the meaning of Section 1332(c) are third-party actions..., but not all third-party actions are direct actions within the statute. It does not apply to a suit brought by an injured party against the tortfeasor's insurer based on the insurer's alleged bad-faith failure to settle within policy limits.").

[6] *See* note 5, *supra* (collecting cases).

and unjust enrichment. Tellingly, and consistent with this, in the Personal Injury Action filed prior to this action, plaintiffs asserted these claims solely against defendant.[7]

Whether the claim for breach of oral agreement may be considered a "direct action" is a closer question. One may argue that a claim based on the breach of a contractual obligation undertaken by an insurer in pre-litigation settlement negotiations is a "direct action" because, unlike an insurer's independent torts committed in the course of settlement negotiations, the contractual settlement obligation itself is entered into on behalf of the insured. Yet, this "standing in the shoes of the insured" argument does not succeed in this context because plaintiffs' claims against defendant are based solely on defendant's independent actions to avoid litigation, and it is well-established that claims arising from an insurer's independent actions during negotiations with an injured third party, such as failure to settle within policy limits or in good faith, are not "direct actions" under § 1332(c)(1). *See Rosa*, 981 F.2d at 675.[8] Defendant's alleged breach of an oral agreement, although sounding in contract rather than tort, is analogous to such claims. The alleged breach did not arise from the insured's conduct but rather solely from the insurer's own actions. There is no allegation that the insured authorized or even knew of the negotiations between plaintiffs and defendant. And significantly, to recover on the claims they assert here, plaintiffs need not establish the insured's liability, nor indeed any

---

[7] Since two of plaintiffs' claims cannot be considered a "direct action" under § 1332(c)(1), the analysis could end here, as supplemental jurisdiction is appropriate over the third claim pursuant to 28 U.S.C. § 1367(a). Yet because defendant's motion to dismiss all claims is pending, whether the breach of oral agreement claim is a "direct action" is addressed, in the event the other claims are dismissed from this action.

[8] *See also* note 5, *supra* (collecting cases).

aspect of the insured's conduct; rather defendant's alleged liability arises solely from its own conduct and promises during settlement negotiations. As a result, the breach of oral agreement claim, as well as the fraud and unjust enrichment claims, fall outside the meaning of "direct action" under § 1332(c)(1). See Section II, *supra*.[9]

Seeking to avoid this result, plaintiffs, citing *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir. 1974), point out that some courts have found "direct actions" under § 1332(c)(1) even in the absence of state "direct action" statutes.[10] While plaintiffs correctly note that other courts have sensibly concluded that a "direct action" may exist even where that action is not brought pursuant to a state "direct action" statute, the liability of the insurer in those cases is nonetheless contingent on the liability or the conduct of the insured. In *Hernandez*, for example, the Fifth Circuit held that an action brought by an injured employee against his employer's worker's compensation insurer is a "direct action" under § 1332(c)(1). See *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721,

---

[9] Although courts typically seek to restrict rather than expand diversity jurisdiction, in this instance, given the language and legislative history of the "direct action" proviso, there is no reason to give "direct action" a broader construction than its specific meaning at the time of adoption. See 15 Moore's Federal Practice § 102.58[6] (3d ed. 2009) (in construing the proviso in *Northbrook National Insurance v. Brewer*, the Supreme Court "declined to adopt a broad policy-based approach to restrict diversity, and instead construed the statute narrowly according to its clear language and specific legislative history."). See also *Rosa*, 981 F.2d at 675 n. 9 ("Particularly after *Northbrook*, we should be reluctant to give the proviso a broader reach than the clear purpose set forth by Congress.").

[10] Plaintiffs' argument is made primarily in response to defendant's emphasis on the lack of a "direct action" statute in Virginia. See *Richmond, F. & P.R. Co. v. Hughes-Keegan, Inc.*, 207 Va. 765, 773, 152 S.E.2d 28, 33-34 (Va. 1967) ("[U]nder Virginia law, an injured person must reduce his claim to judgment against the tort-feasor before bringing action against the company that issued a liability policy to the tort-feasor."); *Miller v. Augusta Mut. Ins. Co.*, 157 Fed.Appx. 632, 636 (4th Cir. 2005) (same).

723-724 (5th Cir. 1974).[11] Although sounding in contract rather than tort, the basis of the plaintiff's claim in *Hernandez* was still the liability of the insured.[12] By contrast, in this case, whether the insured is liable in tort or in contract is immaterial to whether defendant's conduct constituted a breach of oral agreement or fraud.[13]

---

[11] *Cf. Cunningham*, 669 F.Supp.2d at 628-629 (no "direct action" where employee brought suit against employer's worker's compensation insurer for insurer's independent actions).

[12] *See Rosa*, 981 F.2d at 675 n. 10 ("[I]n each of these cases the insured, as the plaintiff's employer, owed the benefit in question to plaintiff by virtue of the employment relationship and had transferred that liability to an insurance carrier. Therefore, these cases maintain the essential feature of a tort 'direct action' in that the insurer has been substituted as a party-defendant for the legally responsible insured."). *See also Ambulatory Infusion Therapy Specialist, Inc. v. Aetna Health, Inc.*, No. H-06-2111, 2007 WL 173046, at *4 (S.D. Tex. Jan. 18, 2007) (no "direct action" where claim by plaintiff, a third party medical provider, arose from insurer's breach of an agreement with plaintiff to pay cost of medical services provided to insured); *Corn v. Precision Contracting, Inc.*, 226 F.Supp.2d 780, 783 (W.D.N.C. 2002) (declaratory judgment action was a "direct action" because insurer's liability was based on conduct of insured and not on independent wrongs of the insurer, and only issue was whether a statutory amendment affected the policy limits); *Weast v. Travelers Cas. and Sur. Co.*, 7 F.Supp.2d 1129, 1132 (D. Nev. 1998) (no "direct action" where plaintiffs' claims for breach of contract arose out of insurer's unfair settlement practices).

[13] Addressing a related issue, the Second Circuit, in *Rosa v. Allstate Ins. Co.*, 981 F.2d 669 (2d Cir. 1992), found that a suit brought by an injured third party against an insurer on a no-fault insurance policy was not a "direct action" because the "named insured presumably had nothing whatsoever to do with [the insurer's] decision to disallow benefits on the policy, and likewise presumably had no connection with the insurer's alleged scheme of malicious deception and fraud[.]" *Id.* at 678. *See also* 15 Moore's Federal Practice § 102.58[6] (3d ed. 2009). *But see Ford Motor Co. v. Insurance Co. of North America*, 669 F.2d 421 (6th Cir. 1982) (finding "direct action" where claim was brought pursuant to statute that required insurer to provide coverage regardless of fault).

IV.

Plaintiffs' claims arise from the independent conduct of the insurer, namely from its alleged breach of oral agreement and fraud. Thus, plaintiffs' motion to remand is appropriately denied.[14]

An Order has already issued. *See Eltsefon v. State Farm Mutual Automobile Insurance Co.*, No. 1:11cv991 (E.D. Va. Nov. 14, 2011) (Order) (Doc. 36).

Alexandria, Virginia
November 16, 2011

/s/
T. S. Ellis, III
United States District Judge

---

[14] It is worth nothing, as defendant points out, plaintiffs' position on the remand issue is in stark contrast to its position in the Personal Injury Action, where plaintiffs argued that:

> State Farm is being sued not in its capacity as an insurer of Cook, but as an entity whose separate and distinctive acts and misrepresentations resulted in injury to the [p]laintiffs. State Farm therefore was not joined to this action on account of the issuance by it of a policy of motor vehicle liability insurance to [the insured].

Def's Opp. Ex. 6.